IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| SUSAN VIRGINIA PARKER, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No.: 5:14cv00035 |
| ) | |
| v. ) | |
| ) | |
| MICHAEL AUSTIN, et al., ) | By: Hon. Michael F. Urbanski |
| ) | United States District Judge |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

In this case, plaintiffs filed suit against defendants pursuant to 42 U.S.C. § 1983 alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution and state law claims for false imprisonment and negligence as a result of the removal of two children from their parents' home by the local department of social services. Defendants have all filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the defendants' motions to dismiss will be granted.

I.

Plaintiffs allege Michael Austin ("Austin"), a Clarke County Department of Social Services case worker, began investigating plaintiffs in relation to truancy charges filed against the mother of plaintiffs JF and KF,[1] in late 2011 to early 2012. Plaintiffs moved to Shenandoah County in 2012 and soon thereafter sought medical treatment at Rockingham Memorial Hospital. During that visit, Dr. Kent Folsom called Austin about the children, and Austin in turn contacted the Shenandoah Department of Social Services. On July 25, 2012, defendants Brittany Utterback, Jennifer Wimer, and Amanda Judd ("the DSS defendants"), employees of the Shenandoah County Department of

---

[1] JF and KF are minors.

Social Services, removed JF and KF from their home, and took the children to the emergency room at Shenandoah Memorial Hospital. The hospital diagnosed the children with an infection.

The DSS defendants sought an emergency removal order from the Shenandoah County Juvenile and Domestic Relations Court on July 27 which was granted based on an affidavit and sworn testimony provided to the Juvenile and Domestic Relations ("J&D") judge. The J&D judge granted temporary custody of JF and KF to Shenandoah DSS, and the children were placed in foster care at the Henry & William Evans Home for Children ("the Evans Home"). Defendants Laura Regan, Mike and Winona Powers, and Brent and Missy Rudolph ("the Evans Home defendants") are employees of the Evans Home.

The J&D court held another hearing on the emergency removal on August 1 and continued the matter until August 29. At the August 29 hearing, the J&D court made no adjudication as to abuse or neglect and returned the children to their parents. The court dismissed the DSS petition on November 7, 2012. Sometime between the August 29 hearing and the November 7 hearing, Shenandoah DSS also found the allegations of abuse and neglect as to the parents to be unfounded.

Plaintiffs filed a six-count complaint asserting violations of the Fourth and Fourteenth Amendments for the initial seizure of JF and KF against Austin and the DSS defendants, violations of the Fourth and Fourteenth Amendments for the continued detention of JF and KF against all of the defendants, a wrongful imprisonment claim against all of the defendants, and a negligence claim against the Evans Home defendants. The defendants have moved to dismiss almost all of the counts in the complaint pursuant to Rule 12(b)(6) with the exception of Count Six against the Evans Home defendants.

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is

plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).[2]

While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.") (internal quotation marks omitted). Thus, in order to survive a Rule 12(b)(6) motion, the complaint must present sufficient nonconclusory factual allegations to support a reasonable inference that the plaintiff is entitled to relief and the defendant is liable for the unlawful act or omission alleged. See Francis v. Giacomelli, 588 F.3d 186, 196-197 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678-79, and Gooden v. Howard Cnty., Md., 954 F.2d 960, 969-70 (4th Cir. 1992) (en banc)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

---

[2] The court may take judicial notice of matters of public record, documents attached to the complaint, and documents attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted).

3

## A.

Virginia Code § 63.2-1517 permits a physician, a child-protective service worker, or a police officer to take custody of a child, for up to 72 hours, prior to obtaining a court order and without prior approval of the child's parent or guardian. Emergency removals are the exception and only proper when all of the following conditions are met:

> 1. the circumstances of the child are such that continuing in his place of residence or in the care or custody of the parent . . . presents an imminent danger to the child's life or health to the extent that severe or irremediable injury would be likely to result or if evidence of abuse is perishable or subject to deterioration before a hearing can be held;
> 2. A court order is not immediately obtainable;
> 3. The court has set up procedures for placing such children;
> 4. Following taking the child into custody, the parents or guardians are notified as soon as practicable. . . . ;
> 5. A report is made to the local department; and
> 6. The court is notified and the person or agency taking custody of such child obtains, as soon as possible, but in no event later than 72 hours, an emergency removal order pursuant to § 16.1-251 . . . . Any person or agency petitioning for an emergency removal order after four hours have elapsed following taking custody of the child shall state the reasons therefor pursuant to § 16.1-251.

Va. Code § 63.2-1517(A)(1) – (6).

A social worker's determination that a "child is subject to imminent danger to his life or is in imminent danger of irreparable injury to his health is a sharply focused factual determination essentially free of the kind of subjective judgments that are peculiarly susceptible to error . . . ." Jordan v. Jackson, 15 F.3d 333, 347 (4th Cir. 1994). Indeed, it is one that "can readily and accurately be made by a physician or adequately trained DSS worker" unlike the determinations for "probable cause necessary for civil asset forfeiture . . . welfare entitlement . . . or parental fitness . . . ." Id. (collecting cases). Thus, emergency removal is "arbitrary and abusive" if there is no reason to believe a child is being abused or in imminent danger of harm but warranted if there is "'some evidence of child abuse' or a reasonable basis to suspect the child is in immediate danger of serious harm."

4

Martin v. St. Mary's Dep't. of Soc. Servs., 346 F.3d 502, 512 (4th Cir. 2003) (Traxler, J., dissenting) (quoting Weller v. Dep't. of Soc. Servs. for Baltimore, 901 F.2d 387, 391-92 (4th Cir. 1990)).

After taking emergency custody of a child and upon filing an emergency removal petition ex parte, the J&D judge must find probable cause, supported by affidavit or sworn testimony, that

> 1. The child would be subjected to an imminent threat to life or health to the extent that severe or irremediable injury would be likely to result if the child were returned to or left in the custody of his parents, guardian, legal custodian, or other person standing in loco parentis pending a final hearing on the petition.
> 2. Reasonable efforts have been made to prevent removal of the child from his home and there are no alternatives less drastic than removal of the child from his home which could reasonably protect the child's life or health pending a final hearing on the matter.

Va. Code § 16.1-251(A)(1) – (2).

### B.

In Count One, all four plaintiffs assert a violation of the Fourth Amendment regarding the initial seizure of JF and KF on July 25, 2012. First, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Alderman v. United States, 394 U.S. 165, 174 (1969). As such, since JF and KF were the only individuals allegedly seized, the parent-plaintiffs may not assert a claim for violation of the Fourth Amendment as pleaded. See Gedrich v. Fairfax Cnty. Dep't of Family Servs., 282 F. Supp. 2d 439, 468-69 (E.D. Va. 2003). As to JF and KF, plaintiffs claim that both the initial removal of the children and their continued detention amounted to violations of the 4th Amendment.

### 1.

A claim brought under the Fourth Amendment must be "'analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)). Thus, plaintiffs' claims under the Fourth Amendment must be addressed according to a

5

"reasonableness standard." Id. at 842-43. A seizure involving the removal of a child from the home is reasonable if "(1) it is pursuant to a court order; (2) it is supported by probable cause; or (3) it is justified by exigent circumstances, meaning that state officers 'have reason to believe that life or limb is in immediate jeopardy.'" Gedrich, 282 F. Supp. 2d at 469 (quoting Brokaw v. Mercer Cnty., 235 F.3d 1000, 1010 (7th Cir. 2000)).

Plaintiffs' claim against the DSS Defendants under Count One fails because the seizure of the children was reasonable. Because the seizure here was not pursuant to a court order, for it to be reasonable, the DSS defendants must have had either probable cause to support the removal of the children from their home or "'have reason to believe that life or limb [was] in immediate jeopardy.'" Id. According to the plaintiffs, a physician at Rockingham Memorial Hospital contacted Austin at Clark County DSS about the children. In turn, Austin contacted Shenandoah County DSS. Both the doctor and Austin are considered mandated reporters of suspected child abuse under the Virginia Code. Va. Code § 63.2-1509(D). Clearly, a physician who can "readily and accurately" determine whether "a child is subject to imminent danger" decided he must contact someone within the Department of Social Services about these children. See Jordan 15 F.3d at 347. Austin forwarded that information to the DSS defendants. According to plaintiffs, Austin told the DSS defendants that he believed one of the parents suffered from a mental health condition—Munchhausen's Sydrome by Proxy or Factitious Disorder by Proxy. The Shenandoah County DSS defendants then made their own determination that the children needed to be removed from the home, immediately took the children to the emergency room at Shenandoah Memorial Hospital, and confirmed the children were suffering from a clostridium difficile infection.[3]

Furthermore, the defendants sought an emergency removal order from a J&D judge within seventy-two hours of the children's seizure, and that judge found probable cause supporting the

---

[3] Clostridium difficile is "a bacterial species found in feces of humans and animals" and is a "frequent cause of colitis and diarrhea following antibiotic use." Stedman's Medical Dictionary 182620 (27th Ed.).

6

removal of the children. Accord Va. Code § 16.1-251. Courts are obliged to afford "considerable deference . . . [to] the delicate judgments made by responsible state officials. Perhaps in no context is this truer than where the state is acting as *parens patriae* to protect children from imminent danger." Jordan, 15 F.3d at 348. The DSS defendants are "trained DSS workers" who came to the conclusion that there was a "reasonable basis to suspect that the [children were] in immediate danger of serious harm." Va. Code § 16.1-251. The DSS defendants based that decision on information provided to them by a physician and another trained DSS worker and their own observations of the children. The initial seizure of the children did not violate the Fourth Amendment.

Plaintiffs argue Austin should be held liable because he set the events in motion that led to the seizure of the children. However, because the court believes the removal of the children did not amount to a Fourth Amendment violation and the emergency room physician first contacted Austin regarding the children before Austin contacted Shenandoah DSS, he cannot be liable for providing information to Shenandoah DSS that set the emergency removal in motion. Accord Gedrich, 282 F. Supp. 2d at 649.

The DSS defendants were fully capable of making the initial determination that exigent circumstances existed requiring the emergency removal of the children, and the J&D judge determined there was probable cause to support the emergency removal. For these reasons, the court cannot conclude that the emergency removal of the children was unreasonable, and, therefore, plaintiffs' Count One fails to state a claim upon which relief can be granted.

2.

In Count Three, plaintiffs assert that the continued detention of the children until August 29 "without probable cause or any other constitutional justification" violated the Fourth Amendment. Compl., Dkt. No. 1, at *16. Plaintiffs argue that the continued detention after the hospital diagnosed the children with an infection was unreasonable, and the continued detention after receiving the

7

emergency removal order was unreasonable. As stated above, a seizure involving the removal of a child from the home is reasonable if "(1) it is pursuant to a court order; (2) it is supported by probable cause; or (3) it is justified by exigent circumstances, meaning that state officers have reason to believe that life or limb is in immediate jeopardy." Gedrich, 282 F. Supp. 2d at 469 (internal quotations omitted).

Plaintiffs believe that once the DSS defendants received confirmation that the children had a "confirmed medical condition" the children should have been returned home. Dkt. No. 1 at *11. However, simply because the children were suffering from an infection does not mean that the DSS defendants could not have any reason to believe that the children were "subject to imminent danger." Jordan, 15 F.3d at 347. First, an allegation of Munchhausen's by Proxy or Factitious Disorder by Proxy does not mean a person is incapable of actually getting sick.[4] Plaintiffs admit as much in the complaint in their description of the disease as "a mental illness that sometimes results in disordered behavior where the sufferer falsifies symptoms of [herself], [her] children, dependent loved ones and/or where the sufferer intentionally causes an illness to [herself] or an illness to a loved one." Dkt. No. 1 at *8. Second, the fact that the children were sick enough that they required a visit to the emergency room supports the DSS defendants' argument that they had a reasonable concern the children were in imminent danger.

Furthermore, a J&D court granted custody of JF and KF to the Department of Social Services on July 27 based on a finding of probable cause that the children were in danger. To the extent that plaintiffs argue that the J&D judge was misled by the DSS defendants' affidavit's reference to Munchausen's, that argument is unavailing. The judge had other indicators based on the sworn statements contained in the affidavit and the "sworn testimony of [a] DSS representative," on

---

[4] Munchausen syndrome by proxy, or factitious illness by proxy, is defined as "a form of child maltreatment or abuse inflicted by a caretaker (usually the mother) with fabrications of symptoms and/or induction of signs of disease, leading to unnecessary investigations and interventions, with occasional serious health consequences, including death of the child." Stedman's Medical Dictionary 885860, 435100 (27th Ed.).

8

which to base his or her decision. See Dkt. Nos. 24-1, 24-2. Most importantly, after a hearing, the J&D judge had the opportunity to make a credibility determination which this court is in no position to second guess. The J&D judge withheld ruling on the allegations of abuse and neglect at the August 1 hearing by agreement of the parties, and the matter was continued until August 29 by agreement of the parties as well. The parent-plaintiffs here were represented by counsel at that hearing, and the children-plaintiffs were represented by a guardian ad litem. Moreover, after hearing evidence at that hearing, the J&D court's August 1 order left the child protective order in place and left the children in the custody of the Department of Social Services. Dkt. No. 24-5. Finally, the Evans Home defendants cannot be liable for the continued placement of the children since the Department of Social Services had legal custody of the children pursuant to a valid court order. See Gedrich, 282 F. Supp. 2d at 466 (No liability for "foster care placement" and "subsequent confinement" when county had legal custody of a child pursuant to a court order.)

In conclusion, plaintiffs have failed to state a Fourth Amendment violation claim against the DSS Defendants and the Evans Home defendants for the continued detention of the children. As such, Austin cannot be held liable for setting the events in motion. Accordingly, Count Three must be dismissed for failure to state a claim upon which relief can be granted.

## C.

In Counts Two and Four of the complaint, plaintiffs claim both the initial seizure and continued detention of the children violated their 14th Amendment rights. Defendants argue there was no constitutional violation because their actions did not shock the conscience, and, even if there was a 14th Amendment violation, they are entitled to absolute and qualified immunity. Plaintiffs argue that substantive due process analysis does not apply because they allege a violation of a particular liberty interest, and none of the defendants are entitled to immunity.

Despite plaintiff's assertions to the contrary, abundant case law in the Fourth Circuit and from this district support the application of the shocks the conscience standard to alleged infringements of a parent's right to the care, custody, and control of his or her children. Substantive due process analysis applies because in Counts II and IV plaintiffs do not rely on an amendment containing an "explicit textual source of constitutional protection against a particular source of government behavior." Lewis, 523 U.S. at 842.[5] While the "fundamental right to care, custody, and control of . . . children" may be one of "the oldest of the fundamental liberty interests recognized by [the Supreme Court]," it is a substantive component of the 14th Amendment and, thus, government action alleged to violate that right must be analyzed under a shocks the conscience standard. Troxel v. Granville, 530 U.S. 57, 65 (2000); Martin, 346 F.3d at 511 (Traxler, J., dissenting); Weller, 901 F.2d at 391; Prescott v. Wade, No. 4:12CV126, 2013 WL 1352168, at *8 (E.D. Va. Apr. 2, 2013); Murphy v. Goff, No. 6:10cv00026, 2010 WL 2292130, at *6 (W.D. Va. June 7, 2010); Proctor v. Green, No. 3:07CV00045, 2008 WL 2074069, at *4-5 (W.D. Va. May 14, 2008); Gedrich, 282 F. Supp. 2d at 460-61.

Counts Two and Four fail because none of the conduct alleged exceeds "both negligence and deliberate indifference" to reach "a level of gross negligence or arbitrariness" that shocks the conscience. Gedrich, 282 F. Supp. 2d at 461; see also Young v. City of Mount Ranier, 238 F.3d 567, 574 (4th Cir. 2001) (government actor must intend to unjustifiably injure plaintiff to shock the conscience).

### 1.

An emergency taking of "custody of a child, even where later investigation proves no abuse occurred," may be justified if the state "'has some reasonable and articulable evidence giving rise to a

---

[5] For example, as explained above, alleged violations of the Fourth Amendment are analyzed under a reasonableness standard because the text of the amendment protects the people "against unreasonable searches and seizures." See Lewis, 523 U.S. at 842-43.

reasonable suspicion that a child has been abused, or is in imminent danger of abuse.'" Murphy, 2010 WL 2292130 at *6 (quoting Croft v. Westmoreland Cnty. Children and Youth Servs., 103 F.3d 1123, 1126 (3d Cir. 1997)). Thus, "'at an irreducible minimum, a case worker must have no less than a reasonable suspicion of child abuse (or imminent danger of abuse) before taking a child into custody prior to a hearing.'" Id. (quoting Hatch v. Dep't for Children, Youth, and Their Families, 274 F.3d 12, 23-24 (1st Cir. 2001)).

In this case, the complaint alleges that an emergency room physician contacted a DSS representative, Austin, who then contacted Shenandoah County DSS. There was clearly some evidence of abuse or that the children were in imminent danger such that the physician felt obligated as a mandated reporter to contact the Department of Social Services after seeing these children. Furthermore, the DSS defendants spoke with a social worker at Rockingham Memorial Hospital, spoke to Austin about his prior involvement with plaintiffs, and consulted the children's medical records in order to make their determination. See Dkt. No. 24-1 at *2-3. Again, physicians and social workers are fully capable of making the objective determination that emergency removal of a child is necessary. See Jordan, 15 F.3d at 347. There was certainly enough evidence to give defendants a reasonable suspicion that the children were being abused or in imminent danger which is buttressed by the fact that the J&D judge found probable cause supporting the emergency removal in the ex parte hearing. See Dkt. No. 24-2; Dkt. No. 24-3. Accordingly, the emergency removal of the children from their parents' custody does not shock the conscience in order to state a substantive due process violation, and Count Two must be dismissed.

## 2.

The continued detention of the children does not shock the conscience either. As explained above, the defendants had "some reasonable and articulable evidence" that the children were subject to imminent danger. Murphy, 2010 WL 2292130 at *6 (internal quotations omitted). Furthermore,

11

following a hearing, the J&D judge found there was probable cause to continue the children's detention beyond the initial emergency removal. The Evans Home defendants cannot be liable because they only housed the children pursuant to a court order granting custody to Shenandoah County DSS. See Gedrich, 282 F. Supp. 2d at 466. The complaint does not allege that the defendants intended to unjustifiably injure the plaintiffs, and none of the allegations rise to the level of "gross negligence or arbitrariness." Gedrich, 282 F. Supp. 2d at 461. These circumstances clearly do not shock the conscience under the Fourth Circuit's precedent. See Weller, 901 F.2d at 391.

To the extent plaintiffs attempt to assert a claim for a violation of the Fourteenth Amendment due to the alleged injuries the children suffered while in foster care, that claim equally fails. The Due Process Clause does not mean social workers are "duty-bound to protect the child from unknown harm or dangers. Nor 'does [it] mean that every child in foster care may prevail in a section 1983 action against state officials based on incidental injuries or infrequent acts of abuse.'" Doe ex rel. Johnson v. South Carolina Dept. of Soc. Servs., 597 F.3d 163, 175 (4th Cir. 2010) (quoting Taylor ex rel. Walker v. Ledbetter, 818 F.2d 791, 797 (11th Cir. 1987)). Rather, plaintiffs' complaint must allege "'deliberate indifference . . . [implying] at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice.'" Id. (quoting White ex rel. White v. Chambliss, 112 F.3d 731, 737 (4th Cir. 1997)). Here, the complaint alleges that both children "were exposed to Tuberculosis" while in foster care, and the Evans Home defendants "refused to take [JF] to the doctor" after he injured his ankle because they thought "it was only a mild sprain." Compl., Dkt. No. 1, at *13. Plaintiffs claim that a doctor later determined that JF's ankle had been fractured. Id. at *14.

Even assuming without deciding that the Evans Home defendants qualify as state actors for § 1983 purposes, these allegations do not rise to the level of deliberate indifference. "Negligence, and even carelessness, on the part of such officials that results in harm to the child will not support a

12

[§ 1983] claim." Doe, 597 F.3d at 175. The complaint does not allege that the Evans Home defendants ignored JF's complaints about his ankle; it alleges that they did not feel it was severe enough to warrant a visit to the doctor. Specifically, the complaint alleges JF received "inappropriate medical treatment." Compl., Dkt. No. 1, at *17. Thus, plaintiffs merely allege mistake by the Evans Home defendants, not deliberate indifference to a known injury. A mistaken opinion as to the extent of an injury and the incidental exposure to a disease does not shock the conscience thereby giving rise to a constitutional claim. As to the DSS defendants, the complaint does not allege they knew or had reason to know that the Evans Home was unsafe or dangerous or that the Evans Home defendants were incompetent. Doe, 597 F.3d at 173. There is no allegation that the DSS defendants were aware of the alleged injuries either. Therefore, the DSS defendants cannot be held liable for ignoring a danger of which they had no notice. Id. at 175. Accordingly, Count Four must be dismissed as to all defendants.

### 3.

Though not specifically pleaded, some of plaintiffs' arguments allude to what amounts to a Fourteenth Amendment procedural due process claim for the delay between the emergency removal and ex parte hearing. See e.g. Dkt. No. 41 at *19-20. Virginia Code § 63.2-1517 permits up to seventy-two hours before seeking an ex parte hearing after the emergency removal of a child from his home, but plaintiffs assert the delay here, about two days, was unreasonable. While plaintiffs draw parallels to criminal process requiring an initial appearance before a magistrate within forty-eight hours of arrest, that argument is misplaced because the Fourth Circuit has specifically distinguished emergency custody removals from criminal proceedings. Jordan, 15 F.3d at 350 ("The infringement of parental liberty that results from an emergency removal, although unquestionably significant and perhaps in some ways even more emotionally traumatic, is less comprehensive in scope than that resulting from an arrest.") In Jordan, the Fourth Circuit confirmed that a sixty-five

hour delay, over a weekend, between an emergency removal and the ex parte hearing was not unreasonable. Id. at 351.[6]

The delay here was at most forty-eight hours, seventeen hours less than the delay in Jordan. There was no intervening weekend or holiday. The complaint does not indicate what time the children were taken by DSS on July 25, 2012, but according to the sworn affidavit filed in support of the emergency removal petition, the J&D court was closed when the children were taken into custody. See Dkt. No. 24-1 at *5.[7]

Despite plaintiffs' argument to the contrary, Jordan does not stand for the proposition that a delay of forty-eight hours between the removal of a child and an emergency removal petition hearing before a judge is unreasonable. Indeed, the Jordan court stated that a delay of up to seventy-two hours was justified "particularly given the magnitude of the state's interest in the welfare of its children and the unthinkable consequence of a premature, erroneous return of a child to the custody of parents in whose custody the child's life might be in imminent danger." Jordan, 15 F.3d at 350. Additionally, the statute itself permits a delay of more than seventy-two hours if that period would expire "on a Saturday, Sunday, or legal holiday or day on which the court is lawfully closed . . . ." Va. Code § 63.2-1517(B). Given the guidance of Jordan and the express language of the statute, the court does not find the timing of the post-deprivation hearing to be unreasonable where, as here, the delay was at most forty-eight hours. As the Jordan court said:

> This difference in the extent of the liberty deprivation between the arrestee and the parent whose child is removed under the authority of section [63.2-1517], we are satisfied, can justify at least the incremental additional time (less than one day) prior to post-deprivation review at issue here, particularly given the magnitude of the state's interest in the welfare of its children and the unthinkable

---

[6]The portions of Jordan heavily relied on by all of the parties addressed both facial and as-applied challenges to the delay permitted by Va. Code § 63.2-1517 in the context of the procedural due process requirements under the Fourteenth Amendment. Jordan, 15 F.3d at 342-43. The Jordan court also noted that if the delay in that case had been seventy-two hours, rather than sixty-five, that fact would not have changed its analysis of the as-applied challenge. Id. at 345 n.14.
[7] The affidavit provides the reason for the delay in accordance with Va. Code §§ 63.2-1517(A)(6) and 16.1-251.

14

> consequence of a premature, erroneous return of a child to the custody of parents in whose custody the child's life might be in imminent danger. County of Riverside did not lay down a categorical rule even for adult criminal arrestees that a probable cause determination must be made before the expiration of 48 hours. Additionally, although in County of Riverside the Supreme Court stated that an intervening weekend is not an extraordinary circumstance that could justify delaying a probable cause hearing before the 48 hours specified as the general limit by the Court . . . to the extent that the period of delay that we approve today is attributable to an intervening weekend, we believe this additional delay is also constitutionally permitted as a consequence of the differences between the criminal processes and the civil removal process.

Jordan, 15 F.3d at 350 (citing County of Riverside v. McLaughlin, 500 U.S. 44, 55-57 (1991) (internal citations omitted)).

Plaintiffs believe this case represents what the Jordan court envisioned when it said "there will yet be circumstances in which a removal ultimately will be proven to have been unjustified and that in these cases any delay prior to judicial review will have prolonged the deprivation of rights occasioned by erroneous removal." Jordan, 15 F.3d at 347. Plaintiffs ignore the opinion's next sentence, however, wherein the court states: "However, given the stringent limitations placed on the authority to remove a child in the first place, the nature of the underlying determination that must be made, and the certainty of the almost immediate review that the removing officials know follows every emergency removal, we believe that these cases will be fairly infrequent." Id. The Fourth Circuit has recognized the General Assembly's intent to err on the side of caution when it comes to the protection of children from potentially "life-threatening abuse. Especially given the enormity of the potential consequences of an erroneous *return* of a child to an abusive family . . . ." Id. at 349; Wolf v. Fauquier Cnty. Bd. of Supervisors, 555 F.3d 311, 323-24 (4th Cir. 2009). Indeed, to rule otherwise would turn these Virginia statutes on their head and leave mandated reporters with the choice to either investigate suspected abuse and face potential § 1983 liability or not investigate and "risk tragic consequences" to a child. Wolf, 555 F.3d at 323. In conclusion, the delay between the

15

removal of the children and the ex parte hearing here did not violate the plaintiffs' procedural due process rights under the Fourteenth Amendment.

D.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction is discretionary, and a district court may decline to exercise this jurisdiction if it "has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(2). Plaintiffs fail to state a claim over which this court has original jurisdiction. Considering "'the values of judicial economy, convenience, fairness, and comity,'" however, the court will exercise its discretion to retain jurisdiction over plaintiffs' state law claims because the court is already very familiar with the facts and legal issues presented in this case. Nelson, 965 F.Supp.2d at 751 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). Accordingly, the court will address the defendants' motions to dismiss Count Five of the complaint, a state law claim for false imprisonment.[8]

1.

In Count Five, the plaintiffs allege JF and KF were "wrongfully confined within the Evans Home by the actions of all Defendants." Dkt. No. 1 at *18. The parties' various arguments on this claim are substantially similar to the arguments raised as to the Fourth Amendment claims. The defendants argue that the confinement of the children in the Evans Home was pursuant to a valid court order in accordance with the Virginia Code provisions on emergency removals. Furthermore,

---

[8] Some of the defendants addressed the wrongful imprisonment claim as falling under 42 U.S.C. § 1983. See e.g. Dkt. No. 24 at *11; Dkt. No. 28 at *22. According to plaintiffs, however, they allege only a state law claim for false imprisonment. See Dkt. No. 41 at *21; Dkt. No. 42 at *17; Dkt. No. 43 at *24. Indeed, in order to state a § 1983 claim, a plaintiff must allege a violation of a "right, privilege, or immunity secured by the Constitution or laws of the United States" which plaintiffs have not done in Count Five. Clark v. Link, 855 F.2d 156, 163 (4th Cir. 1988) (citing Briley v. State of California, 564 F.2d 849, 853 (9th Cir. 1977)). Furthermore, a reading of Count Five as a § 1983 claim for false imprisonment in violation of the Fourth Amendment would be duplicative of Counts One and Three.

16

the children remained at the Evans Home because the case was continued by agreement of the parties and pursuant to the J&D court's order. Plaintiffs again argue there was no justification for the emergency removal order and continued confinement at the Evans Home because the children were actually sick. As to the Evans Home defendants, plaintiffs argue there is no good faith exception to the tort of false imprisonment in Virginia.

**2.**

"False imprisonment is the restraint of one's liberty in the absence of any sufficient legal excuse." Lewis v. Kei, 281 Va. 715, 724, 708 S.E.2d 884, 890 (2011). Essentially it is the imprisonment of a person "without lawful process, or the unlawful execution of lawful process." Montgomery Ward & Co. v. Wickline, 188 Va. 485, 489, 50 S.E.2d 387, 389 (1948) (quoting Kress & Co. v. Roberts, 143 Va. 71, 75, 129 S.E. 244, 246 (1925)). There is no requirement that a defendant act with "malice, ill will or the slightest wrongful intention, and neither the good faith of a defendant nor that of his employee will defeat a plaintiff's right to recover" for false imprisonment. Zayre of Va., Inc. v. Gowdy, 207 Va. 47, 51, 147 S.E.2d 710, 713 (1966) (citations omitted).

Having found that the removal of the children and their continued detention did not violate the Fourth Amendment or any of the applicable juvenile and domestic relations statutes, plaintiffs cannot prevail on a claim of false imprisonment. Lewis, 281 Va. at 724, 708 S.E.2d at 890 ("If the plaintiff's arrest was lawful, the plaintiff cannot prevail on a claim of false imprisonment.") (citing DeChene v. Smallwood, 226 Va. 475, 481, 311 S.E.2d 749, 752 (1984)). As discussed above, the initial removal of the children from their parents' home was supported by a reasonable belief that the children were in danger. Defendants sought and obtained an emergency removal order from the J&D court within the time frame permitted by statute, the J&D court found probable cause existed warranting the granting of custody of the children to the local department of social services, and that protective order remained in place when the hearing on the matter was continued by agreement of

17

the parties. The placement of the children at the Evans Home was pursuant to valid court orders granting legal custody of the children to the department of social services. As such, plaintiffs fail to state a claim for false imprisonment.

## IV.

In conclusion, "there is always a risk of error when an emergency removal of a child from his parents' custody is required," Jordan, 15 F.3d at 346, but "Virginia's reporting statute and its social services apparatus are both based on the assumption that false positives—mistaken reports of child abuse followed by DSS investigations—are less harmful than false negatives—serious ham to a child that could have been prevented but was not." Wolf, 555 F.3d at 323. The DSS defendants believed exigent circumstances existed requiring the emergency removal of the children, a decision later ratified by a Virginia Juvenile and Domestic Relations Court judge. The children then remained in the custody of the Department of Social Services per that court's order. On the facts alleged here, plaintiffs have failed to state a plausible claim for a violation of either their Fourth or Fourteenth Amendment rights and granting leave to amend would be futile. Neither the initial seizure nor the continued detention of these children amounted to a constitutional violation, nor do the allegations support a claim for false imprisonment. Accordingly, the defendants' motions to dismiss, Dkt. Nos. 20, 23, and 27, will be granted, Austin and the DSS defendants will be dismissed with prejudice, and the court will retain jurisdiction over Count Six against the Evans Home defendants.

An appropriate order will be entered this day.

Entered: April 28, 2015

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge