CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 05 2018

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| SUSAN VIRGINIA PARKER, et al., | ) |
| Plaintiffs, | ) Civil Action No.: 5:14cv00035 |
| v. | ) |
| MICHAEL AUSTIN, et al., | ) By: Michael F. Urbanski |
| Defendants. | ) Chief United States District Judge |

## MEMORANDUM OPINION

Only one claim remains unresolved in this case—Count Six of the complaint, alleging negligence against defendants Laura Regan, Mike and Winona Powers, Brent and Missy Rudolph, and the Henry & William Evans Home for Children, Inc. ("Evans Home"). This negligence claim arises out of an ankle injury allegedly sustained by plaintiff Justis Funkhouser[1] while he was in foster care at the Evans Home in 2012. Because the doctrine of charitable immunity bars this state law claim, defendants' motion for summary judgment will be **GRANTED** and this case **DISMISSED**.

I.

In this action filed July 24, 2014, plaintiffs contend two children were unconstitutionally removed from the home of their parents and placed at the Evans Home, where they received improper medical treatment and were subject to physical and emotional abuse and neglect. The court dismissed with prejudice the vast majority of the claims raised

---

[1] Funkhouser was a minor at the time the complaint was filed in July 2014; accordingly, he proceeded through his parents and next friends. He has since reached the age of majority and moved to be substituted as a party plaintiff, which motion was granted by Order entered October 30, 2015.

in plaintiffs' complaint by Memorandum Opinion and Order entered April 28, 2015. The sole remaining claim, Count Six, a state law tort claim concerning an ankle injury of one of the children, was scheduled for trial. On the eve of the discovery deadline, plaintiff Justis Funkhouser moved for a voluntary dismissal of Count Six, without prejudice, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. By agreed Order, the court granted that motion on November 24, 2016.

Plaintiffs thereafter appealed the dismissal of Counts One through Five of the complaint. On June 6, 2017, the Fourth Circuit Court of Appeals dismissed the appeal for lack of jurisdiction and remanded the case for completion as to Count Six, finding no appealable final decision had been issued since Count Six was dismissed without prejudice pursuant to Rule 41. Back before this court, plaintiffs moved to amend the complaint to add a seventh count, alleging intentional infliction of emotional distress. The court denied that motion by Memorandum Opinion and Order entered October 27, 2017. This matter is now before the court on defendants' motion for summary judgment as to Count Six.

## II.

Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant

substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., No. 13-2044, 2014 WL 2871492, at *1 (4th Cir. June 25, 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." Anderson, 477 U.S. at 255. However, the non-moving party "must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). Instead, the non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir.

3

2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (citing Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 124 (4th Cir. 1990)).

### III.

In Count Six of the complaint, alleging negligence, Justis Funkhouser claims that he suffered an ankle injury but was not allowed to see a doctor, and defendants breached their duty of care to provide proper medical treatment to foster children. As a result, Funkhouser claims he "suffered with a fractured ankle and lack of medical treatment for at least three weeks, and great mental and emotional anguish, pain and suffering resulting therefrom." Compl., ECF No. 1, at ¶ 112. Defendants argue that because the Evans Home is a charitable organization, Funkhouser's negligence claim is barred by the doctrine of charitable immunity. The court agrees.

The doctrine of charitable immunity "is grounded in the public policy that the resources of charitable institutions are better used to further the institution's charitable purposes, than to pay tort claims lodged by the charity's beneficiaries." Ola v. YMCA of S. Hampton Roads, Inc., 270 Va. 550, 555, 621 S.E.2d 70, 72 (2005). Indeed, as the Virginia Supreme Court has recognized, "it is manifestly desirable that they should be encouraged to do their good work, and to this end protected so far as it is consistent with public safety and the public good from pecuniary liability to those who accept their benefits." Weston's Adm'x v. Hosp. of St. Vincent of Paul, 131 Va. 587, 107 S.E. 7785 (1921), abrogated on other

4

grounds, McDonald v. Hampton Training Sch. for Nurses, 254 Va. 79, 486 S.E.2d 299 (1997).

Virginia favors a limited form of charitable immunity, exempting charitable organizations from some, but not all, tort liability. Ola, 270 Va. at 555, 621 S.E.2d at 72 (citing Weston's Adm'x v, 131 Va. at 610, 107 S.E. at 792-93). Immunity precludes a charity's beneficiaries from recovering damages for the negligent acts of its servants or agents, so long as due care was exercised in their hiring and retention. Id. at 556, 621 S.E.2d at 72. An agent or servant of a charity shares the charity's immunity from liability while engaged in the charity's work and acting directly for the benefit of the charity. See Bhatia v. Mehak, Inc., 262 Va. 544, 551 S.E.2d 358 (2001); Moore v. Warren, 250 Va. 421, 425, 463 S.E.2d 459, 461 (1995). Immunity does not extend to invitees or strangers having no beneficial relationship to the charitable institution, however. Ola, 270 Va. at 555, 621 S.E.2d at 72. Nor does it extend to liability for acts of gross or willful and wanton negligence. Id.

"[T]o cloak itself in charitable tort immunity, an organization must establish that it is 'charitable' for purposes of the tort immunity doctrine, and that the plaintiff was a beneficiary of the organization's charitable activities at time of the allegedly tortious conduct." Davidson v. Colonial Williamsburg Found., 817 F. Supp. 611, 613 (E.D. Va. 1993); accord Ola, 270 Va. at 555, 621 S.E.2d at 72. Courts employ a two-part test to determine whether an organization is "charitable" and thus qualified to assert immunity under this doctrine. First, the "charter is examined for the stated purpose," and second, "the character of the actual operation of an institution is analyzed." Radosevic v. Va. Intermont College, 633 F. Supp. 1084, 1087 (W.D. Va. 1986). "If an organization's charter sets forth a

charitable or eleemosynary purpose, there is a rebuttable presumption it operates as a charitable institution in accordance with that purpose. However, if the manner in which the organization actually conducts its affairs is not in accord with the charitable purpose, then the presumption may be rebutted and the bar of charitable immunity does not apply." Ola, 270 Va. at 557, 621 S.E.2d at 73 (internal citations omitted).

Here, the evidence establishes that the Evans Home was incorporated in 1952 as a nonprofit, charitable organization that qualifies as a 501(c)(3) entity for tax purposes and is classified as a public charity under the Internal Revenue Code. See Jaccard Aff., ECF No. 118-1, at ¶¶ 2, 4; Ex. A & B to Jaccard Aff., ECF No. 118-2, 118-3. It has operated as a nonprofit, charitable organization since its inception, Jacard Aff., ECF No. 118-1, at ¶ 6, is funded primarily through private donations, id. at ¶ 10, and is governed by a volunteer board of directors, id. at ¶ 14. The Evans Home's purpose is to provide care and a home—free of charge—to children placed in its care by the Commonwealth of Virginia, or placed by homeless or indigent families in need of someone to take care of their children. Jaccard Aff., ECF No. 118-1, at ¶¶ 12-13.

Plaintiff Justis Funkhouser does not dispute that the Evans Home's charter sets forth a charitable purpose, nor does he dispute that it operates in accordance with that purpose. Rather, Funkhouser claims not to be a beneficiary of the charity's services, because he did not willingly accept them. Funkhouser insists he was placed at the Evans Home against his will and the will of his family; thus, he never entered into a voluntary relationship with this charitable organization and charitable immunity does not bar his claim.

The Virginia Supreme Court has defined a beneficiary for these purposes as "a person who receives something of value, which the organization by its charitable purpose, undertakes to provide." Byrd Theatre Found. v. Barnett, 287 Va. 291, 297, 754 S.E.2d 299, 302 (2014) (emphasis omitted) (citing Ola, 270 Va. at 563, 621 S.E.2d at 77). In other words, "a person is a beneficiary of charity if he or she has a 'beneficial relationship' to the charitable organization." Ola, 270 Va. at 563, 621 S.E.2d at 77 (citing Roanoke Hosp. Ass'n v. Hayes, 204 Va. 703, 707, 133 S.E.2d 559, 562 (1963)). An individual need not receive financial assistance from a charitable organization to be a "beneficiary" for purposes of charitable immunity. Id. at 564, 621 S.E.2d at 77. "An individual is 'a beneficiary of [charitable] bounty' if that individual's interaction with the entity 'is related to the charitable purpose of the [organization].'" Id.

Funkhouser contends that because he did not want or need the services of the Evans Home, he did not enter into a beneficial relationship with the organization and is not a beneficiary for charitable immunity purposes. Funkhouser's position finds no support in the case law. Indeed, the cases he relies on stand for the general principle that charitable immunity bars claims of negligence "by those who accept the charitable institution's benefits." Univ. of Va. Health Servs. Found. v. Morris ex rel. Morris, 275 Va. 319, 331, 657 S.E.2d 512, 517 (2008); see also Mem. Hosp., Inc. v. Oakes, 200 Va. 878, 885, 108 S.E.2d 388, 393 (1959) (a charitable institution in Virginia "is liable to beneficiaries of the charity for negligence of its employees if it fails to exercise ordinary care in the selection and retention of its employees"); Weston's Adm'x, 131 Va. 587, 107 S.E.2d at 791 ("if a suffering man avails himself of their charity, he takes the risks of malpractice, if their charitable agents have

7

been carefully selected"); Hosp. of St. Vincent of Paul v. Thompson, 116 Va. 101, 81 S.E. 13, 14 (1914) ("a beneficiary of the charity cannot hold the association responsible for negligent injuries"). Funkhouser, a minor at the time, was placed in the care of the Evans Home by the Department of Social Services,[2] where he stayed and was cared for, receiving supervision, lodging, meals and other amenities. See Jaccard Aff., ECF No. 118-1, at ¶¶ 15-16. Funkhouser received something of value which the Evans Home undertakes to provide, see Byrd Theatre Found., 287 Va. at 297, 754 S.E.2d at 302, and his interaction with the Evans Home plainly is related to the organization's charitable purpose, see Ola, 270 Va. at 564, 621 S.E.2d at 77. The fact that it was not his will, or the will of his family, that he be placed in the Evans Home in the first place is of no moment. He was not a stranger or mere invitee of the Evans Home having no beneficial relationship to the charitable institution. Cf. Byrd Theatre Found., 287 Va. at 297, 754 S.E.2d at 302 (holding organ enthusiast who undertook to repair and restore Byrd Theatre organ was not Foundation's beneficiary because he was not receiving services consistent with charitable organization's aims); Hosp. of St. Vincent of Paul, 116 Va. 101, 81 S.E. at 14 (holding plaintiff who accompanied her sick friend to the hospital for treatment was a "stranger" and not a beneficiary of the charity). Rather, Funkhouser is precisely the type of beneficiary contemplated by the charitable immunity doctrine. Thus, his negligence claim is barred.[3]

---

[2] As defendants point out, the Department of Social Services had legal custody of Funkhouser at the time, and Funkhouser had been represented by a guardian ad litem at the proceedings in Juvenile Domestic Relations Court.
[3] Funkhouser raises no argument -- nor is there any suggestion in the record -- that the Evans Home did not exercise due care in the hiring and retention of its employees.

8

## IV.

For these reasons, defendants' motion for summary judgment (ECF No. 117) will be **GRANTED**, the pending motion in limine (ECF No. 68) **DENIED as moot**, and this case **DISMISSED**. An appropriate Order will be entered.

Entered: 01-05-2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge